## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JAMES J. JARDINA, # 418-567   *

          *

Plaintiff,        *

          *

v.            *     Civil Action No.  JKB-16-1255

          *

DEPARTMENT OF PUBLIC SAFETY AND *

 CORRECTIONAL SERVICES,  *

RICHARD J. GRAHAM, JR. Warden (WCI), *

DENISE GELSINGER, Ass't Warden (WCI), *

B. ZILLER, CO II (WCI),[1]   *

WEXFORD HEALTH SOURCES, INC., *

ROBUSTIANO BARRERA, Doctor (WCI), *

BEVERLY McLAUGHLIN, RNP, Medical[2] *

 Provider (WCI)    *

          *

Defendants.       *

         ***

## MEMORANDUM OPINION

   Pending is James J. Jardina's complaint filed pursuant to 42 U.S.C. § 1983.  Defendants Wexford Health Sources, Inc., Robustiano Barrera, M.D., and Beverly McLaughlin, C.R.N.P., (collectively, the 'Wexford Defendants'), by their counsel, have filed a motion to dismiss or, in the alternative for summary judgment (ECF No. 14).  Defendants the Department of Public Safety and Correctional Services ("DPSCS"), former Assistant Warden Denise Gelsinger, and COII Bobby J. Ziler (collectively, the "State Defendants"), by their counsel, have filed a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 27.  Jardina filed an opposition and a supplement to the Wexford Defendants' motion to dismiss or in the alternative for summary judgment (ECF Nos. 33, 38) to which the Wexford Defendants filed a reply.  ECF No. 42.

---

[1]  The Clerk will amend the docket to spell defendant's last name as Ziler.

[2]  The Clerk will amend the docket to reflect that McLaughlin is a certified registered nurse practitioner, C.R.N.P.

The issues have been briefed, the matter is ripe for disposition, and no hearing is required.  *See* Local Rule 105.6 (D. Md. 2016).

## BACKGROUND

Jardina is an inmate at the Dorsey Run Correctional Facility in Jessup, Maryland.  The claims he presents in this complaint arise from his May 6, 2015, fall from a wheelchair during the time he was an inmate at Western Correctional Institution ("WCI") in Cumberland, Maryland.

Jardina describes himself as a 6'5 inches tall, 280-pound, "wheelchair bound" and handicapped inmate.  *Id*.  The attachments to his complaint show that on May 8, 2014, defendant McLaughlin wrote a medical order to provide Jardina a wheelchair for transportation over distances greater than 50 feet.  ECF No. 1-4.  On May 4, 2015, Barrera updated and continued the order through May 4, 2016.  ECF 1-5.

Jardina describes the events leading up to his fall on May 6, 2015, as follows.  Defendant Ziler instructed inmate Shannon Cline to take a wheelchair from the housing unit to push Jardina by wheelchair across the prison grounds to the medication line.  ECF 1 at p. 5.  Jardina alleges that Ziler "knew inmate Cline was not trained as wheelchair attendant and knew the wheelchair was to[o] small and not personalized to Jardina."  *Id*.  Jardina also asserts the pathway had ruts and depressions and was wet because it had rained.  *Id.*  As Cline pushed Jardina, the wheelchair hit a rut on the sidewalk and the right front wheel broke off the wheelchair.  Cline lost his footing on the wet pavement and lost control of the wheelchair, causing Jardina to be thrown from the wheelchair.  Jardina alleges he hit his head, lost consciousness, and injured his back, neck, and left hand and wrist.  *Id*.

2

Jardina has filed a copy of Russell Marks's declaration executed on December 14, 2015. ECF 1-7.  Marks states he is a federal Bureau of Prisons' inmate housed at WCI.  *Id.*  Marks attests he was an inmate safety specialist at the Federal Correctional Institution in Mariana, Florida, for several years and is very familiar with the safety requirements of McKesson wheelchairs and the Americans with Disabilities Act.  Jardina filed a copy of the McKesson wheelchair manual with his complaint.[3]  ECF No. 1-2.  Marks states that DPSCS and WCI medical and administrative staff "know" that 1) five or more wheelchairs are stored at the front of every building; 2) these wheelchairs are not personalized to the inmate using them; 3) inmates not trained as wheelchair attendants use these wheelchairs to push wheelchair-bound inmates down the sidewalks to meals and to receive their medication; 4) untrained wheelchair attendants are pushing wheelchair-bound inmates through the rain and snow on sidewalks full of ruts and depressions; and 5) water causes the wheelchair to rust making it unsafe for use.  *Id.*  Notably, Marks fails to link with specificity these allegations to defendants.  He does not explain why these defendants "know" of these matters.  *Id.*

Jardina alleges that defendants were deliberately indifferent to his safety and medical needs by failing to provide him a personalized wheelchair and certified, trained wheelchair pusher, to maintain the wheelchair in which he was injured, and to maintain the pathway where he was injured.  *Id.*  Jardina claims that defendants' actions and omissions violated his rights under the Eighth Amendment of the United States Constitution and the Americans with Disabilities Act (ADA) and also demonstrate gross negligence under the Maryland Tort Claims Act**.**  ECF 1 at p. 4.  As redress, Jardina seeks a declaration that defendants violated his constitutional rights, an injunction ordering defendants to comply with wheelchair maintenance

---

[3] Jardina does not explain why he has provided a Mckesson wheel chair manual for a Sunmark Performance wheelchair.  ECF 1-2 at 1-24.  The wheelchair he fell from was a Medline wheelchair.  ECF 27-3 at p. 5. ¶ 12.

and instruction manuals, compensatory and punitive damages of unstated sum, disability compensation of $90.00 per day against each defendant, court costs, and release from prison on parole or medical parole.

## STANDARD OF REVIEW

### I.      Motion to Dismiss

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id*. at 679.  The Supreme Court in *Twombly* stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'...Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

Complaints filed by pro se plaintiffs, as here, are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, the Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009).

## II.      Motion for Summary Judgment

Defendants assert they are entitled to dismissal or summary judgment in their favor on several grounds, including lack of exhaustion and the absence of a genuine dispute as to any material fact.   Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).   If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows a genuine dispute exists as to material facts. *See Celotex v. Catrett,* 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*  "In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party."  *Downing v. Baltimore City Bd.* of *School Comm'rs*, Civ. No. RDB 12-1047, 2015 WL 1186430, at *1 (D. Md. Mar. 13, 2015) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Defendants have filed copies of verified documents and declarations with their pleadings. The court may consider a wider range of documents when it treats a motion to dismiss as a motion for summary judgment, which it may do pursuant to Rule 12(d).  *See Syncrude Canada Ltd. v. Highland Consulting Group, Inc*., 916 F. Supp. 2d 620, 623 (D. Md. 2013).  When the

court does so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Notably, "the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion." *Ridgell v. Astrue*, Civ. No. DKC-10-3280, 2012 WL 707008, at *7 (D. Md. Mar. 2, 2012). Thus, this requirement "can be satisfied when a party is 'aware that material outside the pleadings is before the court.'" *Walker v. Univ. of Md. Med. Sys. Corp.*, Civ. No. CCB-12-3151, 2013 WL 2370442, at *3 (D. Md. May 30, 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Though the Court "clearly has an obligation to notify parties regarding any court-instituted changes in the pending proceedings, [it] does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Here, defendants designate their motion as a "motion to dismiss, or in the alternative, motion for summary judgment." Further, Jardina was provided the opportunity to dispute these exhibits with verified exhibits and affidavits. ECF Nos. 16, 28.

## DEFENDANTS' RESPONSE

### I.     State Defendants

The State Defendants move for dismissal of the claims against them or for summary judgment and have filed supporting declarations and other evidence.

### A.  Graham Declaration

Defendant Richard Graham explains that Wexford Health Sources, Inc., contracts with the State of Maryland to treat inmates in DPSCS custody. Graham states that neither he nor any correctional administrator nor any member of the correctional staff is personally involved in providing inmate medical care. ECF No. 27-2. Graham states that he has no authority to make decisions about inmate medical care or to order the contractor's medical staff to provide a

particular procedure or treatment. Graham states Wexford medical professionals are in charge of scheduling medical procedures and recommending whether an inmate should have access to a wheelchair. Graham also states: "At no time did a doctor advise my office of any need for Plaintiff to have a 'personalized' wheelchair." *Id*. ¶5. Graham further states that after the incident, the paved walkways have been repaired and cracks sealed, and Jardina's medication at WCI was delivered to him so that he did not need to travel across the WCI compound. *Id*.[4]

### B. Inmate Grievance Office ("IGO") Hearing

On May 6, 2015, Jardina filed an Administrative Remedy Procedure ("ARP") request based on his fall. Defendant Denise Gelsinger, then acting warden, dismissed the ARP, WCI-0751-15. ECF 1-3. Gelsinger indicated investigation had revealed that the wheelchair Jardina was using malfunctioned due to normal wear and tear, not a crack in the pavement. The wheelchair was immediately taken out of service and sent for repair. The dismissal noted that after the incident, Jardina was treated in the medical unit for wrist pain. *Id*. The Commissioner of the Division of Correction affirmed the dismissal. ECF 27-3 at p. 7 ¶30.

On July 18, 2015, Jardina filed a grievance with the IGO. As summarized by Administrative Law Judge ("ALJ") Marleen Miller, Jardina claimed that he was injured due to WCI's "arbitrary and capricious failure to: 1) assign him a wheelchair that was properly adjusted to his size and weight; 2) assign a trained or certified wheelchair pusher to transport him; 3) properly maintain the path for wheelchair traffic; and 4) properly maintain the wheelchair." ECF 27-3 at p. 8 (Opinion for IGO Case No. 20151706). The ALJ found Jardina's negligence claims meritorious. The ALJ determined Jardina's injuries were caused by the DOC's negligence, its arbitrary and capricious failure to properly maintain the path, its failure to provide the grievant a properly sized and adjusted wheelchair and/or properly trained wheelchair pusher,

---

[4] As noted, Jardina is presently housed at a different correctional facility. *See supra*, p. 2.

and recommended awarding Jardina $4,600.  *Id*. at p. 12.   The decision was affirmed by the Secretary of DPSCS.  ECF 27-2 ¶ 6.  The money was deposited in Jardina's account on April 27, 2016. *Id.*

The ALJ's decision recognized that Jardina presented causes of action in negligence and under the Eighth Amendment:  "As a result of these allegedly negligent or grossly negligent acts and/or omissions, the Grievant relies on the Eighth Amendment in support of his claim."  ECF No. 27-3 at p. 9 (footnote omitted).  The ALJ's decision, however, based liability based solely upon a finding of negligence, and it noted that "[o]ne need not reach Eighth Amendment standards to recognize the validity of the Grievant's claim."  ECF No. 27 at p. 9.

## II.    Wexford Defendants

Jardina faults defendants McLaughin and Barrera for failing to order a personalized wheelchair for him despite knowing that he weighed over 220 pounds and to ensure the wheelchair was properly maintained.  Jardina holds Barrera responsible for his fall and alleges Barrera treated him for injuries in a conflict of interest.  ECF 1 at pp. 5-6.

The Wexford Defendants have submitted an affidavit and verified copies of Jardina's medical records.  Janice Gilmore, R.N., Regional Administrator for Wexford Health Sources, Inc., attests that Wexford and its employees and agents do not maintain the custody and care of wheelchairs issued to inmates at WCI.  ECF 14-5.  Wheelchair pushers are assigned from the inmate population by DPSCS, and neither Wexford nor any medical staff at WCI select the pushers, train them, or evaluate them.  The wheelchairs are physically maintained by DPSCS or its agents.  Neither Wexford nor any medical staff at WCI maintain or supervise wheelchair maintenance, and adjustments to a wheelchair to accommodate a particular inmate would be DPSCS's responsibility.  ECF No. 14-5 ¶ 2.  Gilmore states Barrera and Beverly McLaughlin do

not have any responsibility for the wheelchair pushers, operation or maintenance of wheelchairs, or for personalizing wheelchairs for inmates. *Id.* ¶ 4.

Jardina's verified medical records indicate that on May 5, 2015, McLaughlin saw Jardina for complaints of an injury to his right shoulder from a fall from his bunk. ECF 14-4 at pp. 1-3. Jardina reported that he fell on May 1, 2015, inside his cell while trying to move between the sink and bunk. Jardina explained his walker does not fit in the space between the bunk and sink. Jardina stated his bunk was not secure and slides easily, making it easy for him to fall. Jardina said he fell on his right shoulder while attempting to grab the bunk bar to help catch his fall and fell on his left knee. Jardina complained of right shoulder pain radiating down the ventral side of his upper arm and an injury to his left knee. He also complained of a mild burning, throbbing feeling. His strength was adequate in his left upper extremity. Physical examination revealed right shoulder tenderness, moderate pain with motion, left hand tenderness and moderately reduced range of motion, and right knee tenderness with mild pain with motion. McLaughlin recommended Motrin for Jardina for pain relief and ordered an x-ray of his right shoulder. She noted that Jardina's recent falls would be discussed with the regional medical director and Jardina referred to a provider within 10 days. The x-ray results showed no evidence of acute fracture, dislocation, or subluxation. There was no significant abnormality noted. *Id*. at p. 4.

On May 6, 2015, Jardina submitted a sick call request for injuries to his left wrist, right shoulder, and lower back, which he attributed to his May 5, 2015, fall from his wheel chair. *Id.* at p. 5. On May 6, 2015, Jardina was examined by Dennis Martin, R.N. Martin observed Jardina was alert and oriented and the pupils of his eyes were equal and round and reacted to light. Martin noted no abrasions on Jardina's palms or swelling to his wrist. Jardina had good range of motion and capillary refill, and his grip was within normal limits. Jardina denied any

injury to his head or other injury.  Martin advised Jardina to treat his wrist with ice, compression, and elevation.  *Id.* at p. 6.

On May 7, 2015, Sue Brant, R.N., saw Jardina and observed redness on his ulnar left wrist and bruising on the underside of the left wrist.  Jardina reported tenderness to flexion of the wrist and was given an ACE wrap.  No appreciable wrist swelling was observed.  Brant ordered an x-ray of Jardina's left wrist.  *Id.* at p. 9.  The x-ray results revealed no evidence of acute fracture, dislocation, or subluxation.  *Id.* at p. 10.

On May 8, 2016, Jardina declined to be seen at sick call.  He stated he had been seen and x-rays were completed.  *Id.* at p. 11.

On May 11, 2015, Jardina submitted a sick call request complaining of left wrist and hand, neck, back, and right shoulder pain.  *Id.* at p. 12.

On May 12, 2015, Jardina submitted a sick call request concerning his fall in his cell.  He complained of injuries to his left wrist and hand, lower back, right shoulder, neck, and head.  *Id.* at p. 13.

On May 14, 2015, Dr. Barrera examined Jardina for injuries from his fall from the wheelchair.  Jardina reported that he had suffered a bump over his left forehead and injured his left hand.   Barrera noted Jardina's medical history was significant for a gunshot wound to the left hand that clinically developed reflex sympathetic dystrophy ("RSD").[5]  Jardina complained of worsening burning and tingling in his left hand.  Jardina's pulses were good.  Barrera noted subjective burning and tingling sensation in the left hand.  Jardina's grip was poor due to pain and discomfort.  Jardina indicated that he wanted his own wheelchair.  Barrera told Jardina his request was a security issue.  *Id.* at pp. 14-16.

---

[5]  The Wexford Defendants describe reflex sympathetic dystrophy syndrome (RSDS), as complex regional pain (often burning) syndrome, which may include pain, tenderness, and swelling.  ECF No. 14-3 n.2.

On June 2, 2015, McLaughlin saw Jardina for review of his x-rays. Jardina requested a personal wheelchair because of pressure on his left wrist when ambulating with a walker. Jardina said the assistant warden told him that he would not be granted a wheelchair or single cell due to the number of ARPs he writes. McLaughlin referred Jardina to the regional medical director to review whether Jardina needed a single cell and a permanently assigned wheelchair. *Id.* at pp. 16-17.

On June 3, 2015, Barrera saw Jardina for complaints concerning his left wrist and hand. Jardina complained of trouble using his walker because his left wrist and grip were weak. Examination revealed Jardina's left hand grip was 25% less compared to his right hand. Jardina complained he had constant pain. Barrera noted Jardina's pulse was palpable. Jardina's left hand muscles and forearm muscles were beginning to atrophy, probably because he was not able to use his left forearm. Barrera evaluated Jardina with hypersensitivity on the left hand and forearm with constant complaint of burning sensation. Barrera indicated Jardina likely had RSD, which could be documented by a neurologist using electromyography. Barrera determined Jardina was unable to safely use a walker. Barrera referred Jardina to physical therapy to strengthen his forearm. *Id.* at pp. 18-19. Jardina was approved for physical therapy on June 16, 2015. *Id.* at p. 22.

On June 11, 2015, Colin Ottey, M.D., informed Jardina that he had been approved for a wheelchair and it was switched for his walker. *Id.* at p. 20-23.

## JARDINA'S OPPOSITION

In his opposition response, Jardina attempts to raise new allegations that 1) McLaughlin exceeded her authority by prescribing a wheelchair for him for distances over 50 feet; 2) the Wexford Defendants failed to order a handicapped accessible shower for  him; 3) Dr. Ottey

failed to provide him with pain medication; 4) he has concerns about his ileostomy pouches and tissue around his ileostomy stoma;[6] 5) his walker was not replaced with a permanent wheelchair; 6) the medical records are inconsistent with his injuries; 6) Barrera did nothing to prescribe treatment or medical care for him; 7) he developed RSD due to inadequate medical care; 8) he was improperly denied a prescription for tramadol; and 9) he had received improper medical care for failure to reverse his temporary ileostomy.   ECF 33.   Jardina also introduces new ADA allegations.  *Id.* at pp. 5-7, 9, 13, 18, 19, 25, and 33.   He also disputes the severity of his injuries as reported in the medical records attached to the Medical Defendants' dispositive motion.  *Id.* at 11-12, 13.

The Medical Defendants responded by filing Barrera's affidavit.   ECF 42-1.   Barrera disputes Jardina's allegation that McLaughlin exceeded her authority by prescribing a wheelchair for him.   McLaughlin is a licensed nurse practitioner with prescriptive authority.    Barrera also states a wheelchair is classified as durable medical equipment.   Prescribing the use of a piece of durable medical equipment does not require the health care provider to maintain or supervise training in the use of the equipment.   There are many fields of health care professionals, including doctors, nurses, physical therapists, occupation therapists, as well as other medical providers.    A wheelchair manufacturer's manual specifying that a wheelchair should be maintained, personalized,  and have training supervised by a health care professional does not state what type of health care professional is recommended for that purpose.   Generally, physicians and nurses do not have the requisite knowledge to maintain or supervise training in use of wheelchairs.   Barrera states Wexford purchases the wheelchairs for use by WCI inmates. Once the wheelchairs are delivered to WCI, DPSCS staff assemble, maintain, and operate them.

---

[6]  Jardina's ileostomy predates the events at issue in this case.  *See, e.g.*, ECF No. 33 at p. 34; ECF No. 14-4.

Barrera disputes Jardina's claims that he was "handicapped" and disabled in standing, walking, bending, and lifting and caring for himself in 2014.  *Id*. at ¶ 8.  Barrera states Jardina was able to perform normal daily activities and had functional mobility.  He was able to ambulate short distances with his walker.  Jardina was impaired in walking longer distances and over time evidenced weakness in his left forearm and wrist.  Jardina was then prescribed a wheelchair and a wheelchair pusher for ambulating greater than 50 feet, which Barrera opines that, to a reasonable degree of medical probability, was appropriate for his condition.  Jardina's condition continued to decline, and he was diagnosed with reflex sympathetic dystrophy (RSD), and on June 2, 2015, he was permanently assigned a wheelchair.

Insofar as Jardina seeks to raise new claims in his opposition disputing his post-fall medical treatment, his treatment for chronic pain, ileostomy care, and RSD, or otherwise expand his claims of improper medical care beyond his claim that the Medical Defendants failed to provide a personalized, properly maintained wheelchair for him, his newly introduced claims are outside the scope of the complaint.  A plaintiff may not amend his complaint by his filings in opposition to a motion to dismiss, as "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Mylan Laboratories, Inc. Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir.1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).  Accordingly, the court shall confine its review to Jardina's opposition as it replies to Defendants' dispositive motion to his complaint. [7]

---

[7]  If Jardina wishes to pursue claims based on allegations not raised in the complaint, he may file these claims in a separate complaint.

## DISCUSSION

### I.      CLAIMS AGAINST THE STATE DEFENDANTS

The State Defendants move for dismissal of the claims against them or summary judgment in their favor, asserting that the federal claims against the DPSCS should be dismissed as barred by the Eleventh Amendment and that Jardina fails to state an Eighth Amendment or an ADA claim against them.

### A.  Claims against DPSCS

The State Defendants assert that the DPSCS is an agency of the State of Maryland and immune from suit under the Eleventh Amendment.  The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."  In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

DPSCS is a state agency.  *See* Md. Code. Ann., Corr. Servs. § 1-101(f).  The State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court.  As such, DPSCS is immune from liability under the Eleventh Amendment from suit.  Accordingly, the Eighth Amendment and ADA claims against DPSCS will be dismissed.

### B.  Claims Against Graham, Gelsinger, and Ziler

#### 1.  Eighth Amendment

Graham, Gelsinger, and Ziler assert Jardina fails to state an Eighth Amendment claim against them.  They posit Jardina's lack of a personalized wheelchair and his fall do not rise to the level of a constitutional injury.  Further, they claim Jardina's allegations are insufficient to suggest they were subjectively aware of a risk to him and deliberately chose to ignore it.

An inmate may state an Eighth Amendment claim based on the conditions of his confinement. Indeed, the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." *Makdessi v. Fields,* 789 F.3d 126, 132 (4th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society."  *Id.*

To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must show (1) an objectively serious deprivation of a basic human need causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need.  *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  A plaintiff cannot have been found to be subjected to unconstitutional confinement conditions unless he can show a serious or significant physical or mental injury as a result of those conditions.  *Strickler v. Waters*, 989 F.2d 1375, 1379-81 (4th Cir. 1993).  Therefore, "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Id.*

at 1381; *see Odom v. S.C. Dep't of Corr.*, 349 F. 3d 765, 770 (4th Cir. 2003).  To satisfy the second requirement, a plaintiff must allege facts sufficient to show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and that he disregarded the risk posed.  *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 298.  Of import here, mere negligence is insufficient to support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 835 (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  An official's "failure to alleviate a significant risk, that he should have perceived but did not, while no cause for commendation, cannot … be condemned as the infliction of punishment."  *Id.* at 838.  "The Eighth Amendment deliberate indifference standard requires a far more culpable mental state than mere negligence.  The defendant must recklessly disregard an excessive risk of which he is subjectively aware."  *Gardner v. United States*, 184 F. Supp. 3d 175, 183 n.14 (D. Md. 2014).  *Cf* . *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014) ("'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment."  (citation omitted)).

Jardina fails to link any of the facts he alleges to Graham or Gelsinger.  He alleges Graham and Gelsinger knew that five or more wheelchairs were stored at the front of every building, the chairs were not personalized[8] to the inmates using them, the wheelchair pushers were untrained, the sidewalks were rutted and had depressions, and water causes the wheelchairs to rust, making them unsafe for use.  As to defendant Ziler, Jardina's allegations are slightly more specific.  Jardina asserts Ziler knew Cline was not trained to push the wheelchair, the

---

[8] Jardina does not define a "personalized" chair in the complaint.  In his opposition, he references the McKesson wheelchair manual, which instructs to make sure the chair is "personalized" for the user's size, structure, and physical condition.  ECF 33 at p. 29.

walkway was wet, and the wheelchair was not personalized for him.   ECF 1 at pp. 5.     As

Graham states in his affidavit, administrative and correctional staff are not authorized to make

medical decisions regarding inmates. ECF No. 27-2. There was no medical order requiring a

wheelchair personalized for Jardina's purported needs.   Further, Jardina does not explain in the

complaint what he means by a personalized wheelchair or how such a wheelchair would have

prevented him from falling.   Jardina does not explain how his wheelchair pusher's lack of

training contributed to his injury.   The complaint fails to delineate a serious risk due to the

absence of a personalized wheelchair for Jardina.   Moreover, Jardina provides no support for his

bald assertion that defendants Graham, Gelsinger,[9] or Ziler were personally aware of these

circumstances alleged or that they drew an inference of "substantial risk of serious harm" to

Jardina and deliberately chose to ignore that risk of harm.   *See Farmer*, 511 U.S. at 837.   For

these reasons, Jardina has not satisfied the subjective element for demonstrating an Eighth

Amendment claim:  that defendants acted with the requisite deliberate indifference to his safety.

Even when the facts are viewed in the light most favorable to Jardina, there are no genuine issues

of material fact in dispute.   Accordingly, the court will enter summary judgment in favor of

Graham, Gelsinger, and Ziler as to this claim.

The court recognizes that Jardina, who is self-represented in this case, appears to reason

that if the ALJ found the State Defendants liable for negligence based on state law, there should

be corresponding liability in federal court in regard to his Eighth Amendment claim.   The

standards for proving a negligence claim and an Eighth Amendment violation are decidedly

different.   *See supra*, p. 14.   Jardina's averments do not correspond to the high degree of

---

[9]  The State Defendants do not raise respondeat superior as a defense.  To the extent Jardina may fault Graham and
Gelsinger as supervisors, the complaint provides no evidence to support a finding of supervisory liability.  *See Shaw
v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (outlining requirements to support supervisory liability).

culpability required to establish deliberate indifference necessary to support a constitutional claim.

### 2. ADA Claim

In order to state a claim under the ADA, a plaintiff must show that he is a person with a disability as defined by the statute; that he is otherwise qualified for the benefit he claims to have been denied; and that he was excluded from the benefit due to discrimination based on disability. *See Doe v. University of Md. Medical Systems Corporation*, 50 F.3d 1261, 1265 (4th Cir. 1995); *see also* 42 U.S.C. Section 12131 *et seq.* Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132. State prisoners, such as Plaintiff, may qualify as "qualified individual[s] with ... disabilit[ies]," *id.*, meaning they are entitled to protection under Title II of the ADA. In *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998), the Supreme Court held that "the plain text of Title II of the ADA unambiguously extends to state prison inmates." Here, the complaint does not allege or provide any evidence to suggest Jardina was deprived of a benefit to which he was otherwise entitled because of a disability. Consequently, the ADA claims against Graham and Gelsinger will be dismissed without prejudice.

Lastly, Jardina's summary assertion that Barrera's medical treatment constituted a conflict of interest fails to suggest a violation of constitutional or federal law. Jardina does not attribute improper medical treatment or injury as a result of the purported conflict of interest. ECF 1 at pp. 5-6.

Having determined the State Defendants are not liable for the Eighth Amendment and ADA claims Jardina alleges, the court declines to exercise supplemental jurisdiction over Jardina's state law negligence claims against them.

## II.   CLAIMS AGAINST THE WEXFORD DEFENDANTS

### A.  Claim Against Wexford Health Sources, Inc.,

The Wexford Defendants argue Wexford Health Sources, Inc., is not a "person" amenable to suit under 42 U.S.C. § 1983.  The Court disagrees.  *See Mitchell v. Ottey*, Civ. No. JKB-14-3152, 2016 U.S. Dist. LEXIS 138301, at *5 (D. Md. Oct. 5, 2016) ("A private business is considered a 'person' that may be held liable under 42 U.S.C. § 1983.").  Nevertheless, the Fourth Circuit has stated that a private corporation may be held liable under § 1983 "*only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999).  *See also Love-Lane v. Martin*, 355 F. 3d 766, 72 (4th. Cir. 2004) (stating there is no respondeat superior liability under § 1983).  To the extent Jardina may have named Wexford Health Sources, Inc., as a defendant based on supervisory liability, he has failed to state a claim for relief.  Consequently, the claims against Wexford will be dismissed.

### B.  Claims Against Barrera and McLaughlin

#### 1.  Eighth Amendment

Jardina alleges Barrera and McLaughlin failed to personalize the wheelchair or ensure that it met his needs.  ECF 1.  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir.

2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837.

Janice Gilmore, R.N., Regional Administrator for Wexford Health Sources, Inc., attests that Wexford and its employees and agents do not maintain the custody and care of wheelchairs issued to inmates at WCI. ECF 14-5. Wheelchair pushers are assigned from the inmate population by DPSCS, and neither Wexford nor any medical staff at WCI select the pushers, train them, or evaluate them. The wheelchairs are physically maintained by DPSCS or its agents. Neither Wexford nor any medical staff at WCI maintain or supervise wheelchair maintenance. *Id.* Jardina does not dispute that Barrera or McLaughlin wrote orders for him to be provided a wheelchair for distances over 50 feet. He does not explain how a personalized wheelchair would have prevented his fall. Importantly, he provides no facts to demonstrate Barrera or McLaughlin were aware of his purported need for a personalized wheelchair and then deliberately failed to provide it to him. Viewing the facts in the light most favorable to Jardina, there is no dispute as to any material issue, and Barrera and McLaughlin are entitled to summary judgment as a matter of law as to this claim.

### 2. ADA Claim

Jardina alleges no facts against Barrera or McLaughlin to state an ADA claim. As discussed above, the ADA requires evidence a plaintiff was excluded from a program or activity for which he was otherwise qualified or was excluded on account of a disability. Jardina's bare assertion of an ADA violation fails to support a claim under this statute and will be dismissed.

Having determined the Wexford Defendants are entitled to dismissal of the claims against them or summary judgment in their favor, the court shall decline to exercise supplemental jurisdiction over Jardina's state law claims.

## CONCLUSION

For the reasons stated in this memorandum opinion, the Medical Defendants' motion to dismiss or, in the alternative, for summary judgment is meritorious and will be granted.  ECF No. 14.  The claims against Wexford Health Sources will be dismissed.  The ADA claims against Barrera and McLaughlin will be dismissed without prejudice.   Summary judgment will be entered in favor of Barrera and McLaughlin as to Jardina's claim they failed to personalize and maintain a wheelchair for him in violation of his rights under the Eighth Amendment.  The State Defendants' motion to dismiss or, in the alternative, for summary judgment (ECF No. 27) will be granted.  The claims against the DPSCS will be dismissed.  The ADA claims against Graham and Gelsinger will be dismissed without prejudice.  Summary judgment will be entered in favor of Barrera and McLaughlin as to Jardina's Eighth Amendment claim they acted with deliberate indifference to his safety and health by failing to personalize and maintain a wheelchair for him, train a wheelchair pusher for him, and maintain the walkway where he fell.  The court will decline to exercise supplemental jurisdiction over Jardina's state law claims.  A separate order follows.

<u>March 2, 2017</u>                          _____/s/_____
Date                                                      James K. Bredar
                                                             United States District Judge