# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES J. JARDINA, #418-567 | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-16-1255 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES et al., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Pending are self-represented Plaintiff James J. Jardina's verified Amended Complaint (ECF No. 65) and Defendants Warden Richard Graham and former Assistant Warden Denise Gelsinger's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 80). Jardina filed an opposition to the dispositive motion supported by declarations under oath. ECF 85. The Court will consider the verified exhibits and declarations submitted by Graham and Gelsinger and treat the Motion as one for summary judgment. ECF 80. Also before the Court is Jardina's Motion for Appointment of Counsel, which will be denied. ECF 89; *see* Local Rule 105.6 (D. Md. 2018).

### I. Background

Jardina is a Maryland inmate who describes himself as "wheelchair bound" and handicapped. Compl. ECF 1 at 4. When he first arrived at Western Correctional Institution (WCI), Jardina used a walker and an ileostomy bag.[1] Jardina Decl. ECF 85-1 at 1 ¶ 4; ECF 85

---

[1] An ileostomy is used to move waste out of the body. The apparatus is surgically installed when the colon or rectum is not working properly. *See* https://medlineplus.gov/ency/article/007378.htm

at 4. His claims in the initial Complaint arose from his May 6, 2015, fall from a wheelchair while he was confined at WCI.[2] ECF 1 at 5.

Jardina initiated this action on April 27, 2016, by filing a Complaint pursuant to 42 U.S.C. § 1983 against Wexford Health Sources, Inc., Robustiano Barrera, M.D., and Beverly McLaughlin, C.R.N.P. (collectively, the Medical Defendants), and the Department of Public Safety and Correctional Services ("DPSCS"), Warden Graham, former Assistant Warden Gelsinger, and COII Bobby J. Ziler, (collectively, the State Defendants), raising claims under the Eighth Amendment, the Americans with Disabilities Act (ADA), and a pendent state law claim under the Maryland Tort Claims Act. ECF 1-4.

On March 3, 2017, the Court granted the Medical Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 52. The Court dismissed all claims against Wexford. ECF No. 52. Jardina's claims against Defendants Barrera and McLaughlin under the ADA, 42 U.S.C. § 12131 *et seq.*, were dismissed without prejudice. *Id.*; *see also* Memorandum Opinion, ECF 31 at 3, 20-21 (noting Jardina had alleged no facts to state an ADA claim). Compl. ECF 1 at 4. The Court granted summary judgment in favor of Barrera and McLaughlin as to Jardina's claim that they failed to personalize and maintain a wheelchair for him in violation of his rights under the Eighth Amendment. ECF 52. Additionally, the Court granted the State Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. The Court dismissed the claims against the DPSCS, dismissed the ADA claims against Graham, Gelsinger, and Ziler without prejudice, and entered summary judgment in favor of Graham, Gelsinger, and Ziler as to Jardina's Eighth Amendment claims that they acted with deliberate indifference to his safety regarding his fall from a wheelchair. *Id*; *see also* Memorandum

---

[2] Jardina presently is incarcerated at Dorsey Run Correctional Facility ("DRCF") in Jessup, Maryland.

Opinion, ECF 31 at 3, 20-21 (noting Jardina alleged no facts to state an ADA claim to show he was excluded from a program or activity for which he was otherwise qualified on the basis of a disability); Compl. ECF 1 at 4. The Court declined to exercise supplemental jurisdiction over Jardina's state law claim. ECF 51 at 21.

The Court incorporates by reference here the facts and standard of review set forth in its March 3, 2017, Memorandum Opinion. ECF No. 51.

Jardina appealed to the United States Court of Appeals for the Fourth Circuit. ECF 55. On August 23, 2017, the Fourth Circuit dismissed the appeal and remanded this case for Jardina to file an amended complaint, stating that because this Court had identified a deficiency that Jardina may remedy by filing an amended complaint, the order Jardina was appealing was neither a final order nor an appealable interlocutory collateral order, *Jardina v. DPSCS, et al.*, No. 17-6413 (4th Cir. 2017) (per curiam) (citing *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623-24 (4th Cir. 2015); *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993). ECF 57.

On September 15, 2017, this Court granted Jardina twenty-eight days to particularize his ADA claims against the remaining defendants. ECF No. 59; *see also* Complaint ECF 1 at 4 (alleging "Md. DPSCS WCI Medical and Administrative Staff have knowingly failed to provide reasonable accommodations to Jardina in violation of the [ADA].").

On December 27, 2017, Jardina filed the Amended Complaint, asserting claims against Graham, Gelsinger, Barrera, and McLaughlin. ECF 65. Jardina raised no claims against Correctional Officer Ziler. Thus, the claims against Ziler will be dismissed with prejudice.

On March 19, 2018, Jardina filed a Motion to Withdraw his claims against Barrera and McLaughlin without prejudice. ECF No. 75. Barrera and McLaughlin filed a consent to the Motion. ECF 78. The Court granted the Motion on March 30, 2018. ECF 79.

## II.     Motion for Appointment of Counsel

A federal district court judge has discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1),[3] where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of the Motion (ECF 89), Jardina's ten-page Memorandum in support, and his previous filings, the Court finds that Jardina has demonstrated the ability to articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so, obtain necessary exhibits and documentation, draft declarations, and respond to Defendants. The issues before the Court are not unduly complicated. Therefore, there are no exceptional circumstances to warrant the appointment of an attorney to represent Jardina under § 1915(e)(1). The Motion will be denied.

---

[3] Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

### III. Amended Complaint

Jardina claims that Defendants Graham and Gelsinger (hereinafter "the Defendants") are responsible for the daily operation of WCI, as well as his health and safety. Amended Complaint, ECF 65 at 2. Jardina claims the Defendants (1) knew there were large cracks, depressions, and ruts throughout the sidewalks or pavement at WCI and failed to take appropriate action to ensure Jardina's safety as a "disabled wheelchair bound inmate"; [4] (2) knew untrained and uncertified inmates worked in the WCI wheelchair repair shop and exchanged wheelchair parts from different manufacturers to minimize cost, which made the chairs unsafe; (3) knew he was housed at times on tiers that did not have a handicap accessible shower, in violation of the ADA; (4) knew he was not housed in a handicap accessible cell at times, denying him the ability to move throughout his cell; (5) upon his return to WCI from Dorsey Run Correctional Facility ("DRCF"), placed him in housing unit #3, which forced him to cross the same area that had not been repaired and where he was injured in his wheelchair; (6) on June 10, 2014, denied him access to his walker, forcing him to live on the floor and crawl to use the bathroom; and (7) knew that by placing him on the minimum security tier, they were denying him access to programs, religious services, and prison jobs because the inmates on the minimum security tier run programs, services, and activities by themselves. ECF No. 65 at 2-6. As relief, Jardina seeks "a declaration that the acts and omissions" violated his "rights under the Constitution," compensatory damages in the amount of $400,000, and punitive damages in the amount of $100,000 from each Defendant. *Id.*

---

[4] Jardina's Eighth Amendment claims were raised in the initial complaint. They were considered in this Court's Order and Memorandum Opinion dated March 3, 2017. ECF 51, 52.

### IV. Timeline

Jardina was housed primarily at WCI from March 6, 2014 to April 12, 2017, when he was transferred to DRCF. Winters Decl., ECF 80-2 pp. 5-8. Dates relevant to this case are as follows:

March 6, 2014, Jardina was transferred to WCI. ECF 80-2 at 8.

March 28, 2014, Jardina was issued a walker. The medical order was extended on October 22, 2014 for one year. ECF 80-2 at 10-12; ECF 80-3 at 7.

May 8, 2014, Jardina was issued a medical order for wheelchair use to move distances more than 50 feet. The medical order was extended on November 11, 2015, and an inmate was assigned as a wheelchair "pusher" to assist Jardina. ECF 80-3 at 8-12.

June 10, 2014, Jardina was placed on administrative segregation after an altercation. ECF 80-2 at 2. ¶ 5; ECF 80-2 at 7. At Jardina's request, Dr. Barrera issued an order to house Jardina alone in a handicap accessible cell. On the same day, Dr. Barrera rescinded the order after speaking with the regional administrator.[5] ECF 80-2 at 4 ¶ 9; ECF 85-2 at 42.

August 12, 2014, Beverly McLaughlin, R.N., wrote a medical order to give Jardina access to a handicap shower with grab bars. ECF 80-3 at 5; ECF 80-3 at 5.

August 16, 2014, Jardina was moved to general population in a double cell. ECF 80-2 at 2 ¶ 5; ECF 80-2 at 7; Medical Record, ECF 80-3 at 5.

September 11, 2014, an order was issued for Jardina to be placed in a handicap accessible cell for one year. ECF 80-3 at 6; Jardina Decl. ECF 85-1 at 2 ¶ 14; ECF 80-3 at 6.

September 23, 2014, Jardina was moved to a single cell. ECF 80-2 at 7; ECF 85-1 at 2 ¶ 14.[6]

May 6, 2015, Jardina fell from a wheelchair being pushed by another inmate and was injured on a pathway at WCI. ECF 1 at 5; Medical Record, ECF 85-2 at 46.

June 11, 2015, Dr. Colin Ottey wrote a medical order for a personal wheelchair for Jardina. ECF 74-4 at 7.

---

[5] Janice Gilmore, R.N., was Regional Administrator for WCI. ECF 8-4 at 5 ¶ 11.

[6] The gap in time between the order for a single cell and Jardina's placement in the single cell is unexplained.

On June 17, 2015, Sue Brant, R.N., gave Jardina a personal wheelchair. ECF 14-4 at 23; ECF 80-3 at 12, 13.

September 17, 2015, a maintenance work order was placed for asphalt pathways for housing units #2 and #3. The repair was completed on October 1, 2015. ECF 80-2 at 3 ¶ 8; ECF 27-2 at 2 ¶ 8.

October 23, 2015, Jardina became eligible for minimum security. ECF 80-2 at 2 ¶ 6; ECF 80-2 at 6.

November 24, 2015, Jardina was assigned an inmate "pusher" to assist him with his wheelchair. ECF 80-2 at 2 ¶ 6.

January 7, 2016, Jardina was transferred to minimum security at DRCF. ECF 80-2 at 2 ¶ 6, ECF 80-2 at 6.

May 10, 2016, Jardina was transferred from DRCF and returned to WCI. ECF 80-2 at 2 ¶ 7; ECF 80-2 at 6.

June 1, 2016-April 11, 2017, Jardina was housed on HU4, Tier C, at WCI. ECF 80-2 at 3; ECF 80-2 pp. 5-6.

April 12, 2017, Jardina was transferred back to DRCF. ECF 80-2 at 2 ¶ 7.

### V. Discussion

#### A. Statutory Background

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C.§ 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132; *see Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (holding state prisons fall within the statutory definition of "public entity").

7

To establish a claim under Title II of the ADA, a plaintiff must show that he is a person with a disability as defined by the statute; is otherwise qualified for the benefit claimed to have been denied; and was excluded from the benefit due to discrimination based on disability. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 502-03 (4th Cir. 2016) (citing *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)); *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995); *see also* 42 U.S.C. § 12131 *et seq.* "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners 'could be excluded from participation in')" and thus subjects the States to liability under Title II. *Yeskey*, 524 U.S. at 210.

The United States Court of Appeals Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *Paulone v. City of Frederick*, 787 F. Supp. 2d. 360, 371 (D. Md. 2011), (citing *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 362 (4th Cir. 2008). Title II requires public entities to make reasonable accommodations for persons with disabilities, *see id.* (citing *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 174–75 (4th Cir. 2009); *Constantine,* 411 F.3d at 488. "There is no textual limitation requiring that a plaintiff must demonstrate some other source of legal entitlement to participation in the program or activity at issue" to proceed under the ADA. "Rather, it is enough that the plaintiff is excluded from participation in or denied the benefits of the program on the basis of disability." *Jarobe v. Md. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. ELH-12-572, 2013 WL 1010357, at *17 (D. Md. Mar. 13, 2013).

"[M]eaningful access and the question of whether reasonable accommodations are made to an inmate must be assessed through the prism of the prison setting." *Havens v. Colorado Department of Corrections*, 897 F.3d 1250, 1269 (10th Cir. 2018) (citations omitted.). "[P]risons are unique environments where 'deference to the expert views' of prison administrators is the norm." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 78 (2d Cir. 2016) (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008)); *see also Torcasio v. Murray*, 57 F.3d 1340, 1355 (4th Cir. 1995), *cert. denied*, 516 U.S. 1071 (1996) (noting accommodations are viewed in light of requirements of prison administration). Prison officials have the obligation to consider security and other factors unique to the prison environment in their decision-making, and courts have accorded them considerable discretion to do so. *See Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999) (en banc).

### B. Analysis

Prison medical staff determine whether to prescribe handicap cells, wheelchairs, walkers, and canes based upon medical evaluation of an inmate's needs. Decl. of Tenille Winters, ECF 80 at 1, ¶ 3. Prison housing staff provide handicap cells and related equipment according to medical orders for the prescribed duration. ECF 80-1 at 1, ¶ 3. Inmates in the general prison population may have a walker or cane in their cell. *Id.* Prison security procedures[7] do not permit inmates in administrative segregation to have a cane or walker in their cells. Inmates in segregation cells are permitted use of a walker or cane for out of cell movement only, unless they have a medical order permitting use of a walker or cane in the segregation cell. *Id.*

Every housing unit at WCI has a handicap accessible shower. ECF 80 at 3 ¶ 9. If an inmate is housed on a tier different from the one with the handicap accessible shower, the inmate

---

[7] Defendants do not provide a copy of the policy or procedure.

is taken to that tier for showering. *Id.* WCI is a correctional facility specifically designated for inmates needing handicapped accessible housing and equipment. *Id.* at 2, ¶ 4.

Defendants have submitted a copy of Jardina's traffic history. ECF 80-2. The "block" on Jardina's traffic history indicates the housing unit. The "S" on the traffic history shows Jardina's cell was a handicap cell that is equipped with handrails and a single bunk to allow for more space for wheelchair access and inmate mobility. ECF 80 at 2, ¶ 4; *see also* Traffic History, ECF 80-2 at 5-8. Specifically, Jardina's WCI records show that he was assigned to a handicap cell with handrails and a single bunk from June 10, 2014, to August 16, 2014 (administrative segregation); September 23, 2014, to April 17, 2015; June 11, 2015, to September 30, 2015; and June 13, 2016, to April 12, 2017.[8] ECF 80-2 at 5-7. According to Jardina's traffic history, he was in a double cell without handicap access from March 6, 2014, when he arrived at WCI until June 10, 2014, and then again from August 16, 2014, to September 23, 2014, for a total of approximately four months. ECF 80-2 at 5-8.

Robustiano Barrera, M.D., disputes Jardina's claim that in 2014 and 2015, when he was prescribed a wheelchair for travelling distances of 50 feet or more, that he was "handicapped" and "disabled." In Barrera's view, Jardina was capable of performing activities of daily living during this period of time. Barrera Decl. ECF 80-4 at 4 ¶ 9. He states Jardina "had functional mobility and was able to ambulate short distances with his walker, was able to get in and out of furniture, shower, dress, self-feed, and conduct personal grooming and toilet hygiene." *Id*. Barrera declares Jardina "did not then require a handicap accessible shower and cell, or a

---

[8] Jardina accurately notes in his opposition that his cell assignment from May 13, 2016, to May 31, 2016, was not shown on his traffic history. ECF No. 85 at 6; ECF 80-2 at 6. He indicates he was housed during this time in HU 3-B-20-S, which appears to indicate that he was housed in a single cell. *Id*. He claims 'he was placed right back in harm's way forcing him to cross the same area of broken up, cracked up asphalt" where he had fallen previously. ECF 85 at 6-7.

permanently assigned wheelchair." *Id.* At Jardina's request, in June 2014, Barrera wrote an order to assign Jardina to a single cell. *Id.* After discussing the single cell order with the Regional Administrator, it was determined that the single cell assignment was not medically warranted, and Barrera rescinded the order the same day it was written. *Id.* Barrera notes that over a period of time, Jardina began to evidence weaknesses in his left forearm and wrist, so Barrera ordered a wheelchair and a wheelchair pusher for Jardina when he needed to move distances greater than 50 feet. *Id.* By June 2, 2015, Jardina's condition had worsened to the point where a permanently assigned wheelchair was warranted. *Id.*

On June 10, 2014, [9] Jardina was involved in a fight with an inmate. Winters Decl. ECF 80-2 at 2, ¶ 4. Both inmates were assigned to administrative segregation and housed away from each other pending investigation of the incident in accordance with prison procedures. Jardina was placed in a handicap accessible cell. He did not have a medical order permitting him to have a cane or walker in the segregation cell. ECF 80 at 2, ¶ 5. Jardina was charged and later acquitted of violating an inmate rule stemming from the altercation. The other inmate involved in the fight was found guilty and transferred to another correctional facility on July 25, 2014, to prevent future fights between the inmates. Upon that inmate's transfer, Jardina was moved from administrative segregation to a general population cell on August 16, 2014. *Id*.

On October 23, 2015, Jardina was reclassified from medium to minimum security status. On January 7, 2016, Jardina was moved from WCI, a maximum security facility, to Dorsey Run Correctional Facility (DRCF), a minimum security facility, to accommodate his preference for greater access to prison programs. ECF 80 at 2, ¶ 6. At DRCF, Jardina was charged with an

---

9  Jardina disputes this date. He claims the altercation occurred on May 10, 2014, not June 10, 2014. ECF 85 at 5. His traffic history shows he was moved to segregation confinement on May 10, 2014. ECF 80-2 at 7. The record shows he was first placed in a double cell on May 10, 2014, and on June 10, 2014, he was moved to a single cell.

11

inmate rule violation that would have increased his classification to medium security if he were found guilty. Per prison security policy,[10] Jardina was transferred back to WCI on May 10, 2016, because only inmates with minimum security status may be housed at DRCF.

On May 11, 2016, Jardina was found not guilty of the rules violation. He retained minimum security status but remained at WCI until space became available at DRCF. ECF 80 at 3, ¶ 7. Jardina claims that when he returned to WCI, he was housed "right back in harm's way forcing him to cross the same area of broken up, cracked up asphalt" where he had fallen. ECF 85 at 6-7. Jardina states that on June 11, 2015, after he complained to the medical department and had sustained multiple injuries, he was placed back into a single cell. ECF 85-1 ¶ 17.[11] On or about June 23, 2016, he received a letter from Gelsinger advising that he was being moved to a safer environment while the sidewalk was repaired. ECF 85-1 at 3, ¶ 24. On September 17, 2015, a maintenance work order was placed to patch problem areas on the asphalt pathways for Housing Units #2 and #3, and the repair was completed on October 1, 2015. ECF 80 at 3, ¶ 7.

From June 11, 2016, to April 12, 2017, Jardina was assigned to WCI Housing Unit 4 (HU4) Tier C, in a single cell on a minimum security tier. ECF 80 at 3, ¶¶ 7, 10; ECF 80-2 at 5-6. In his declaration, Warden Graham states that when Jardina was in Housing Unit 4-C, his medication was delivered to him at the housing unit so that he did not need to leave the unit and travel across the compound to obtain his medicine. Graham Decl. ECF 27-2 at 2, ¶ 7. Graham states Jardina's meals were also delivered to him and he could attend religious services within the unit. *Id.* WCI policy provides that wheelchairs are inspected monthly. ECF 80 at 4, ¶ 11. If

---

[10] Defendants do not identify the policy or provide a copy of it.

[11] As noted, it is unclear where Jardina was housed at WCI between May 1, 2016, and June 1, 2016, when he returned to WCI. ECF 88-2 at 6. He states he was housed in HU 3 3-B-20, and it is unclear whether he was in a single handicap cell during this time. ECF 85 at 6-7.

a wheelchair is reported to need repair, it is taken out of service and sent to maintenance for repair. *Id.*

Inmates on Tier C have greater access to certain jobs, tools, and equipment inside and outside the housing perimeter fence. Winters Decl. ECF 80 at 4, ¶ 10. For security reasons, inmates housed in HU4 Tier C have reduced access to general population inmates to guard against job-related contraband entering the general prison population. The reduced access includes a reduced access to religious, educational, and job programs provided in the general population. *Id.* Tennille Winters explains that if an inmate on HU4 Tier C wants to participate in general population programs rather than those offered on the HU4 Tier C, the inmate may request to be moved to HU1, which is a general population housing unit. ECF 80 at 4, ¶ 10; ECF 85-2 at 1.

Jardina counters that during the time he was assigned to HU4 Tier C, he was denied access to programs, services, and activities because the inmates on the tier ran everything themselves. He does not explain why this blocked him from participating in activities on the tier. Jardina argues that he was the only inmate in a wheelchair housed on HU 4, Tier C. ECF 85 at 7. "The Defendants would not let [him] participate in . . . outside detail jobs because he is in a wheelchair." *Id.* He declares that "[o]n multiple occasions after I was moved to HU 4 Tier C, … I requested to work in either the outside maintenance or laundry dep't., and was told that I can not [sic] go outside and work in those departments because I'm in a wheelchair." Jardina Decl. ECF No. 85-1 ¶ 25. He asserts that within the first few months of 2017, all inmates who worked jobs outside the prison were moved to Housing Unit 1, which contradicts Defendants' asserted need to limit access to general population by the minimum security inmates on that tier. ECF 85

13

at 7; Jardina Decl. ECF No. 85-1 ¶ 25.[12]  The Court notes, however, Jardina was transferred to DRCF April 12, 2017.  He claims he was denied a career readiness class because he is in a wheelchair.  Jardina Decl. ECF No. 85-1 ¶ 26.

Graham and Gelsinger state in their declarations that they expect WCI staff to comply with the Directives and WCI policies concerning inmate housing, security classifications, and general prison conditions.  ECF 80-5 ¶ 3, ECF 80-6 ¶ 3.  Gelsinger asserts that when responding to a WCI inmate's administrative remedy procedure (ARP) complaint, she relies on the review and investigations made by staff to respond to the ARP complaint she signs.  ECF 80-6 ¶ 4.

1. **Threshold Issue**

As a threshold matter, Defendants assert that Jardina may not sue them in their individual capacities pursuant to Title II of the ADA because they are not the proper parties.  The court agrees.  *See, e.g.*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) (noting  a public entity," "as it is defined within the statute, does not include individuals"); *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 780 (D. Md. 2001); *Koenig v. Department of Public Safety and Correctional Services*, 2018 WL 1512999, at *8, Civil Action No. JKB-16-1289 (D. Md. March 26, 2018).  Jardina's claims against Graham and Gelsinger in their individual capacities will be dismissed with prejudice.

---

[12]  To the extent Jardina wants to raise claims concerning his confinement at DRCF, he may present them in a separate complaint.  ECF 85-1 at 4.  They are not properly raised here.

### C. Jardina's Claims

#### 1. Broken Sidewalk and Wheel Chair (Claims 1-2)

To the extent Jardina may properly raise claims against Graham and Gelsinger in their official capacities or seeks to reassert ADA claims against the DPSCS, his first claim is that Defendants knew there were large cracks, depressions, and ruts throughout the sidewalks or pavement at WCI and they failed to take appropriate action to repair them. His second claim is that Defendants knew untrained inmates worked in the WCI wheelchair repair shop, resulting in unsafe wheel chairs. He fails, however, to establish that he was excluded from a benefit to which he was entitled due to discrimination on the basis of disability. *See, e.g.*, *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) ("Because there is no evidence in the record to suggest that any failure by the Defendants… stemmed from any discriminatory intent due to any alleged disability, we find that he fails to establish a prima facie claim under the ADA."). Further, to state a claim for compensatory damages under the ADA, a plaintiff must allege facts permitting an inference of intentional discrimination or deliberate indifference. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548 (1999); *see, e.g.*, *Taylor v. Leggett*, Civil Action No. PX 16-115, 2017 WL 1001281, at *6 (D. Md. Mar. 15, 2017). Defendants' Motion for Summary Judgment will be granted as to these claims.

#### 2. Housing Assignment Claims (Claims 3-6)

Next, Jardina alleges he was denied appropriate housing for a handicapped inmate at various times. He claims that he was not housed in a handicap accessible/single cell "at times" denying him the ability to move freely through his cell "at times" due to his disabilities, and that he was housed on tiers "at times" that did not have a handicap accessible shower. ECF 65 at 2. When he first entered WCI on March 6, 2014, Jardina was placed in a double cell and on a tier

that was not handicap accessible, despite his use of a walker and his ileostomy. Jardina Decl. ECF 85-1 at ¶ 5. In his declaration, he claims that he was denied the opportunity to take a shower like any other inmate because he had to wait for custody to take him to a tier that had a handicap shower. ECF 85-1 ¶ 6. He claims on March 31, 2014, he was moved to a handicap accessible tier, but not a handicap accessible cell. ECF 85-1 at 2, ¶ 7. Further, on May 14, 2014, after he was found not guilty of the rule violation and moved to HU3 Tier C, that tier was not handicap accessible. ECF 85-1 at 2, ¶ 9. He states "custody" would not take him to a tier that had a handicap shower. ECF 85 at 3. Further, on April 17, 2015, he was moved to HU3 Tier D, a double cell, and "[his] walker did not fit between the sink [and bunk] and [he] fell on multiple occasions. Jardina Decl. ECF 85-1 at 2 ¶ 15; ECF 85 at 3; ECF 14-4 at 1. He claims that on June 10, 2014, he was denied access to his walker, forcing him to live on the floor and crawl to use the bathroom.

Defendants do not dispute that Jardina is a qualified individual with a disability; rather, they appear to argue that Jardina's needs were addressed in accordance with his condition at different times, the availability of housing to meet those needs, and concerns for Jardina's safety and overall prison security. Defendants do not, however, provide information concerning Jardina's double cell placement for August 16, 2014, to September 23, 2014 and from May 13, 2016, to May 31, 2016 (not shown on his traffic history). They will be directed to respond regarding Jardina's housing status during these periods. The Response should address, but should not be limited to addressing, Jardina's claim that he was denied showers by custody staff because they did not want to take him to the shower and the reasons for the delay in providing housing to meet his identified needs, and they should provide additional verified information concerning referenced security policies about inmate housing and access to medical equipment.

16

### 3. Jobs on the Minimum Security Tier (Claim 7)

Lastly, Jardina claims defendants knew that by placing him on the minimum security tier, they were denying him access to programs, religious services, and prison jobs because the inmates on the minimum security tier run programs, services, and activities by themselves. From June 2016 to April 2017, when he transferred back to DRCF, Jardina was assigned to WCI Housing Unit 4 (HU4) Tier C, a minimum security tier. ECF 80 at 3, ¶ 10.

Inmates on Tier C have greater access to certain jobs, tools, and equipment inside and outside the housing perimeter fence. For security reasons, inmates housed in HU4 Tier C have reduced access to general population inmates to guard against job-related contraband entering the general prison population. Inmates on HU4 Tier C do not have access to religious, educational, and job programs provided in the general population. If an inmate on HU4 Tier C wants to participate in general population programs rather than those offered on the HU4 Tier C, the inmate may request to move to HU1, which is a general population housing unit. ECF 80 at 4, ¶ 10. Jardina asserts, and Defendants do not dispute, that Jardina was denied certain jobs because he uses a wheelchair. It is not clear whether Jardina had access to or requested other jobs, nor is it clear if he had any access to jobs during the time he was on WCI's minimum security unit. Defendants are directed to provide additional information concerning Jardina's access to benefits during the time he was housed on the WCI minimum security tier.

## CONCLUSION

The Court will grant in part and deny in part Defendants' Motion for Summary Judgment (ECF 80). The Court will dismiss the claims as to defendant Officer Ziler. Defendants' Motion for Summary Judgment is granted as to Jardina's first and second claims and is denied as to his other claims. Defendants may renew the Motion for Summary Judgment within twenty-eight

days to address his remaining claims as set forth herein.  The motion for appointment of counsel is denied.

Dated this 17th day of December, 2018.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge