# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MARYLAND

JAMES J. JARDINA, #418-567      \*

                               \*

Plaintiff,                     \*

                               \*

v.                            \*        Civil Action No.  JKB-16-1255

                               \*

DEPARTMENT OF PUBLIC SAFETY AND  \*
   CORRECTIONAL SERVICES, et al.,     \*

                               \*

Defendants.                 \*

                             \*\*\*

## MEMORANDUM OPINION

Pending is a Motion to Renew Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Warden Richard Graham and former Assistant Warden Denise Gelsinger.  ECF 98.  In response, Plaintiff James J. Jardina has filed an Opposition and declaration.  ECF 102.  Also pending is Jardina's Motion to Amend the Complaint.  ECF 103.  No hearing is necessary to resolve the issues.  Loc. R. 105.6 (D. Md. 2018).  For the following reasons, the Motion to Amend will be denied and the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be granted in part and denied in part.

## I.       Background

The procedural history, facts, and standard of review are set forth in the Court's prior Memorandum Opinions (ECF 51, 93) and are incorporated by reference and repeated as necessary to provide context and to resolve the pending motions.

Jardina describes himself as "wheelchair bound" and handicapped.  Compl. ECF 1 at 4. On April 27, 2017, he filed a Complaint pursuant to 42 U.S.C. § 1983, presenting claims arising from his May 6, 2015, fall from a wheelchair at Western Correctional Institution (WCI), and named as Defendants Wexford Health Sources, Inc., Robustiano Barrera, M.D., and Beverly McLaughlin,

C.R.N.P. (collectively, the Medical Defendants), and the Department of Public Safety and Correctional Services ("DPSCS"), Warden Graham, former Assistant Warden Gelsinger, and COII Bobby J. Ziler (collectively, the State Defendants). The Complaint raised claims under the Eighth Amendment, the Americans with Disabilities Act (ADA), and a pendent state law claim under the Maryland Tort Claims Act. ECF 1 at p. 4.

On March 3, 2017, the Court granted the Medical Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF 52. In so doing, the Court dismissed all claims against Wexford. ECF No. 52. Jardina's claims against Barrera and McLaughlin under the ADA, 42 U.S.C. § 12131 *et seq.*, were dismissed without prejudice. *Id.*; *see also* Memorandum Opinion, ECF 51 at 3, 20-21 (noting Jardina had alleged no facts to state an ADA claim); Compl. ECF 1 at 4. The Court granted summary judgment in favor of Barrera and McLaughlin as to Jardina's claim that they failed to personalize and maintain a wheelchair for him in violation of his rights under the Eighth Amendment. ECF 52. Additionally, the Court granted the State Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. The Court dismissed the claims against the DPSCS, dismissed the ADA claims against Graham, Gelsinger, and Ziler without prejudice, and entered summary judgment in favor of Graham, Gelsinger, and Ziler as to Jardina's Eighth Amendment claims that they acted with deliberate indifference to his safety regarding his fall from a wheelchair. *Id.*; *see also* Memorandum Opinion, ECF 51 at 3, 20-21 (noting Jardina alleged no facts to state an ADA claim to show he was excluded from a program or activity for which he was otherwise qualified on the basis of a disability); Compl. ECF 1 at p. 4. The Court declined to exercise supplemental jurisdiction over Jardina's state law claim. ECF 51 at p. 21; ECF 52.

Jardina appealed to the United States Court of Appeals for the Fourth Circuit. ECF 55. On August 23, 2017, the Fourth Circuit dismissed the appeal and remanded the case for Jardina to file

an amended complaint, stating that because this Court had identified a deficiency that Jardina may remedy by filing an amended complaint, the order Jardina was appealing was neither a final order nor an appealable interlocutory collateral order, *Jardina v. DPSCS, et al.*, No. 17-6413 (4th Cir. 2017) (per curiam) (citing *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623-24 (4th Cir. 2015); *Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993)).  ECF 57.

On September 15, 2017, this Court granted Jardina twenty-eight days to particularize his ADA claims against the remaining defendants, ECF No. 59; *see also* Complaint ECF 1 at p. 4 (alleging "Md. DPSCS WCI Medical and Administrative Staff have knowingly failed to provide reasonable accommodations to Jardina in violation of the [ADA].").

Jardina filed an Amended Complaint on December 27, 2017, which he submitted with a declaration.  ECF 65 at 6.  In the Amended Complaint, Jardina asserted claims against Graham, Gelsinger, Barrera, and McLaughlin.  ECF 65.  Jardina raised no claims against Correctional Officer Ziler[1] and later filed a Motion to Withdraw his claims against Barrera and McLaughlin, which was granted.  ECF 75, 79.

In the Amended Complaint, Jardina claimed Defendants:

 (1) knew there were large cracks, depressions, and ruts throughout the sidewalks or pavement at WCI and failed to take appropriate action to ensure Jardina's safety as a "disabled wheelchair bound inmate"; (2) knew untrained and uncertified inmates worked in the WCI wheelchair repair shop and exchanged wheelchair parts from different manufacturers to minimize cost, which made the chairs unsafe; (3) knew he was housed at times on tiers that did not have a handicap accessible shower, in violation of the ADA; (4) knew he was not housed in a handicap accessible cell at times, denying him the ability to move throughout his cell; (5) upon his return to WCI from Dorsey Run Correctional Facility ("DRCF"), placed him in housing unit #3, which forced him to cross the same area that had not

---

[1]       On March 6, 2019, before filing his Opposition, Jardina submitted a filing titled Objections to Ruling or order Pursuant to Rule 46 of the Federal Rules of Civil Procedure and Motion for Extension of Time.  ECF 101.  The Court denied the Motion and granted Jardina twenty-eight days to explain why he believes Officer Ziler violated his ADA rights.  ECF 101.  Jardina did not respond.

been repaired and where he was injured in his wheelchair; (6) on June 10, 2014, denied him access to his walker, forcing him to live on the floor and crawl to use the bathroom; and (7) knew that by placing him on the minimum security tier, they were denying him access to programs, religious services, and prison jobs because the inmates on the minimum security tier run programs, services, and activities by themselves.

ECF 93 at p. 5, ECF 65. Jardina asked for declaratory relief, compensatory damages in the amount of $400,000 against each Defendant jointly and severally, and punitive damages in the amount of $100,000 against each defendant. ECF 65 at p. 6.

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF 65, 80. In response, Jardina filed an opposition with his declaration. ECF 85, ECF 85-1.

On December 18, 2018, the Court granted Defendants' Motion for Summary Judgment as to Jardina's first and second claims and denied summary judgment as to Plaintiff's remaining claims, with leave to renew the Motion for Summary judgment. ECF 93, 94. Jardina's claims against Graham and Gelsinger in their individual capacities were dismissed with prejudice. ECF 93, 94.

Defendants filed the Motion to Renew Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on February 13, 2019, ECF 98, which Jardina opposed in a filing received on March 21, 2019. ECF 102 at p. 32.

## II.    Motion to Amend the Complaint

As a preliminary matter the Court will consider Jardina's Motion to Amend the Complaint. ECF 103. When a party moves for leave to amend a complaint, the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be denied only if one of the following has been established: (1) the amendment would be prejudicial to the opposing party; (2) there has been bad faith by the moving party; or (3) the amendment would be

4

futile. *Mayfield v. National Ass'n for Stock Car Auto Racing, Inc*, 674 F.3d 369, 379 (4th Cir. 2012); *Matrix Capital Management Fund, LP v. Bearingpoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).

Jardina asks to amend his claim of gross negligence contained in his original complaint against the Maryland Department of Public Safety and Correctional Service Medical and Administrative Staff (ECF-1 at p. 4) under the Maryland Tort Claims Act. ECF 103 at p. 1. Jardina states he believes that this claim is not cognizable under 42 U.S.C. § 1983, and a "gaffe in my pleading that may be addressed by amending my complaint." *Id.* at p. 2.

Permitting amendment of the initial complaint at this stage of the proceeding would be futile. Jardina does not show that he has complied with the mandatory notice requirement in the Maryland Tort Claims Act (MTCA). Md. Code Ann., State Gov't §12-106. Filing a claim with the Maryland State Treasurer is a condition precedent to bringing an action under the MTCA, *id.* at § 12-106(b)(1). Courts may not entertain claims under the MTCA from claimants who fail to exhaust their administrative remedies before the Maryland State Treasurer. *Royster v. Gahler*, 154 F. Supp. 3d 206, 217-18 (D. Md. 2015). Therefore, the Court will deny Jardina's Motion to Amend his Complaint.

### III. Discussion

#### A. Americans with Disabilities Act

Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, prohibits excluding qualified individuals with disabilities from participating in or being denied the benefits of the services, programs, or activities of a public entity. To establish a prima facie violation of the ADA, a plaintiff must show that he (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied

the benefits of the program or discriminated against because of the disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

The statute defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *See* 42 U.S.C. § 12131(1)(A)-(B). A state prison is a "public entity" within the meaning of the ADA and, as such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006). "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners 'could be excluded from participation in')" and thus the States are subject to liability under Title II. *Yeskey*, 524 U.S. at 210. Although Title II requires public entities to make reasonable accommodations for persons with disabilities, *see id.* (citing *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 174–75 (4th Cir. 2009); *Constantine*, 411 F.3d at 488, a plaintiff must show a different "causative link between discrimination and adverse action." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 469 (4th Cir.1999), and prove discrimination "by reason of" disability. 42 U.S.C. § 12132.

The United States Court of Appeals for the Fourth Circuit has recognized "three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations." *Paulone v. City of Frederick*, 787 F. Supp. 2d. 360, 371 (D. Md. 2011) (citing *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 362 (4th Cir. 2008)). "There is no textual limitation requiring that a plaintiff must demonstrate some other source of legal entitlement to participation in the program or activity at issue" to proceed under the ADA. "Rather, it is enough that the plaintiff is excluded from participation in

or denied the benefits of the program on the basis of disability." *Jarboe v. Md. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. ELH-12-572, 2013 WL 1010357, at *17 (D. Md. Mar. 13, 2013).

In *Jarboe*, 2013 WL 1010357, at *4, Judge Hollander recognized the term "'reasonable accommodations,'…is essentially synonymous with the term 'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services,' 42 U.S.C. § 12131(2), which is what Title II of the ADA requires a public entity to provide" (citing *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007); *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004)).

"[M]eaningful access and the question of whether reasonable accommodations are made to an inmate must be assessed through the prism of the prison setting." *Havens v. Colorado Department of Corrections*, 897 F.3d 1250, 1269 (10th Cir. 2018) (citations omitted). "[P]risons are unique environments where 'deference to the expert views' of prison administrators is the norm." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 78 (2d Cir. 2016) (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008)); *see also Torcasio v. Murray*, 57 F.3d 1340, 1355 (4th Cir. 1995) (noting accommodations are viewed in light of requirements of prison administration). Prison officials must consider security and other factors unique to the prison environment in their decision-making, and courts have accorded them considerable discretion to do so. *See Onishea v. Hopper*, 171 F.3d 1289, 1300 (11th Cir. 1999). Defendants do not dispute that Jardina is an individual with a disability or that the programs at WCI are subject to the ADA.

Jardina is suing for monetary damages and declaratory relief. Damages have been awarded under Title II of the ADA if a public entity "intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v.*

*Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008); *accord Adams v. Montgomery College (Rockville)*, 834 F. Supp. 2d 386, 393–95 (D.Md. 2011) (applying deliberate indifference standard); *Paulone*, *supra*, 787 F. Supp. 2d at 373–74 (collecting cases endorsing deliberate indifference standard).

### B. Medical History at WCI

Jardina's medical needs changed over the period he was incarcerated at WCI. Affidavit of Robustiano Barrera, M.D. ECF 42-1, ¶ 10. On March 28, 2014, shortly after he arrived at WCI, Jardina informed medical staff that he needed a walker, which was issued. ECF 80-2 at p. 10. The medical order for a walker was extended on October 22, 2014 for one year. ECF 80-2 at p. 7.

On May 8, 2014, Jardina was given a medical order to use a wheelchair for six months for distances longer than 50 feet. ECF 80-2 at p. 9. The medical order was extended on November 25, 2014, for another six months. ECF 80-3 at p. 9; Affidavit of Beverly McLaughlin, R.N., ECF 74-4, ¶ 4.

Between the 2014-2015 period during which Jardina was prescribed a wheelchair to move distances over 50 feet, medical providers determined that he was not "handicapped" or "disabled" in standing, walking, bending, lifting, or caring for himself.[2] Barrera Aff. ECF 42-1, ¶ 9; *see also* Affidavit of Beverly McLaughlin, R.N., ECF 74-4, ¶ 3. Jardina was able to perform normal daily activities. Barrera Aff., ECF 42-1, ¶ 9. Specifically, Jardina had functional mobility: he was able to walk short distances with the aid of his walker, get in and out of furniture, shower, dress, feed himself, and conduct personal grooming and hygiene. *Id.*

On August 12, 2014**,** Jardina was given an order to allow him access to a handicap shower with grab bars. ECF 80-3 at p. 5.

---

[2]     At Plaintiff's request, Dr. Barrera in June 2014 wrote an order for Plaintiff to have a single cell assignment. *Id.* After discussing the single cell order with the Regional Administrator, it was determined that the single cell assignment was not medically warranted, and the order was rescinded on same day it was written. ECF 80-1 at p. 4; ECF 42-1, ¶ 9.

On September 11, 2014, Jardina was given a medical order to be placed in a handicap accessible cell. ECF 80-3 at p. 6.

**C. Housing History at WCI**

Jardina's housing placements reflect his medical orders, disciplinary and security status, and his desire to participate in prison programming. For example, Jardina was placed in administrative segregation on June 10, 2014, after an altercation with another inmate. Both inmates were placed in administrative segregation pending investigation and prison rule violation charges. Jardina was placed in a handicap cell in administrative segregation pending investigation and to avoid encountering the other inmate. At the time, Jardina did not have a medical order for a handicap cell. Winters Decl. ECF 80-2, ¶ 5. After the other inmate was transferred to another facility, Jardina, who was found not guilty of the rule violation, was moved to a general population cell on August 16, 2014, that was not adapted for handicap use. ECF 80-2, ¶ 5; Traffic History 80-2.[3] There is no evidence that Jardina had a medical order for a handicap cell at that time.

On October 23, 2015, Jardina was reclassified from medium to minimum security status and on January 7, 2016, transferred from WCI, a maximum security facility to Dorsey Run Correctional Facility (DRCF), a minimum security facility, to accommodate his request for more access to prison programs. ECF 80-2, ¶ 6l; ECF 85-2 at p. 13. He returned to WCI on May 10, 2016, after he was charged with an inmate rule violation at DRCF. ECF 80-2, ¶ 7; Declaration of Jon R. Scramlin, ECF 98-4, ¶ 3.

---

[3] Cell numbers ending with an "S" are handicap accessible cells. These cells are installed with handrails and a single bunk rather than a double bunk, which allows for more space for wheelchair access and inmate mobility. Winters Decl. ECF 80-2, ¶ 4.

On May 11, 2016, Jardina was found not guilty at his adjustment hearing and maintained hi minimum security status. He returned to DRCF on April 12, 2017,[4] once bed space became available. ECF 80-2, ¶ 7.

Jardina's traffic history shows that after the September 11, 2014, medical order issued, he was assigned to handicap single cell housing at WCI at all times except September 11, 2014 - September 23, 2014 and April 17, 2015 - June 11, 2015. ECF 80-2, at pp. 5-7.

### D. Plaintiff's Claims

#### 1. Claim #3 Denial of Handicap Showers

As noted, on August 12, 2014,[5] Jardina was given an order to allow him access to a handicap shower with grab bars for one year. ECF 80-3 at p. 5. Jardina alleges in the Amended Complaint that Defendants knew he was housed "at times" on tiers without handicap accessible showers. ECF 65 at p. 2. Jardina alleges in the declaration filed with his Opposition that he was denied the opportunity to take a shower like any other inmate because he had to wait for custody staff to escort him to the handicap shower. ECF 85-1, ¶ 6. Defendants respond that a handicap shower on another floor of the housing unit was available to Jardina. Winters Decl., ECF 80-2, ¶ 9 ("Every housing unit at WCI has a handicap accessible shower. If the inmate is housed on a different tier than the one with the handicap accessible shower, the inmate is taken to that tier for his shower.").

---

[4]     On July 19, 2016, Jardina was informed that he would not be permitted to enroll in an employment readiness class at WCI. He was informed "[u]nfortunately, we cannot serve inmates on minimum [security] at this time due to safety concerns." ECF 65-1 at p. 7.

[5]     To the extent Jardina claims in his Amended Complaint that on May 14, 2014, he was moved to HU3 Tier C, a tier that was not handicap accessible, and "custody" would not take him to a tier with a handicap shower (ECF No. 85-3; ECF 93 at 16), there is no record that Jardina had a medical order for a handicap accessible shower during this time.

Defendants assert that general population inmates do not require a shower escort by custody staff. Declaration of Michael Yates, Case Management Supervisor ECF 98-2, ¶¶ 4, 5, 7 ("Inmates housed in general population do not require officer escorts to showers"). Thus, when Jardina was housed in the general prison population, Jardina did not need an officer to escort him to the showers. *Id.* Jardina disputes this assertion, stating "What the Defendants are currently leaving out is, is that in some way the Plaintiff or any other inmate being housed in general population if being housed on different tiers are not able to move freely from tier to tier without an escort in a maximum security institution." ECF 102 at p. 3; Jardina Decl., ECF 102 at p. 32, ¶¶ 5, 9.

On May 21, 2014, Jardina wrote to Lieutenant Carter to inform him that he needed a walker for trips of fifty feet or less and a handicap shower with rails and a seat. Jardina stated, "I'm also having trouble being able to get to a shower due to I have to wait to be taken to B-Tier when they say I can shower." Plaintiff's Ex. # 0022, ECF 102-2 at 1. On June 3, 2014, Carter replied that Jardina did not have an order for a handicap cell, stating, "As long as custody is giving you the opportunity to shower, I see no problem." *Id.*[6]

Between August 16, 2014, and September 23, 2014, Jardina was housed in a general population double cell in HU2-D-015-B, where his was the last cell on the tier and he needed to be escorted to a handicap shower.[7] ECF 102 at p. 6; ECF 98-2, ¶ 5; ECF 80-2 at p. 7. Jardina alleges "custody did not want to take him" to the handicap shower on the tier. ECF 102 at p. 6.

Between May 13, 2016, and June 1, 2016, Jardina was in a general population single cell. ECF 98-2, ¶ 7; ECF 80-2 at p. 6. Jardina was assigned to a single handicap cell on Housing Unit

---

[6] No prisoner shower records for Jardina are in the record.

[7] Jardina uses an ileostomy bag, ECF 33 at p. 34, which arguably renders his need for shower access more compelling.

4 C tier between June 1, 2016, and April 12, 2017. Yates Decl. ECF 98-2, ¶ 8. Defendants have filed a verified copy of Jardina's June 26, 2016, Sick Call Request, in which Jardina complains custody staff "was only letting me shower three time a week." ECF 98-3.

> Jardina asserts:
>
> While he was housed on any other tier in HU2 other than B tier, he needed an officer escort to be taking [sic] to B-Tier to shower in a handicap accessible shower. This goes the same for HU3. HU3-B-tier was the only tier that had a handicap accessible shower.
>
> ***************
>
> Plaintiff could not just walk to another tier (LETS MAKE THIS CLEAR) to go to the shower on another tier other than the tier he was housed on and take a shower in a maximum security institution and again Defendant's [sic] show no policy that would allow such a ridiculous act.

ECF 102 at pp. 6, 7; *see also* Declaration of James Jardina, *id.* at p. 28.

The parties offer differing versions of the events in affidavits and declarations and the differences involve genuine issues of material fact. The parties dispute whether Jardina was in fact able to access the shower without a staff escort during the times he was housed in the general population. In order "to assure meaningful access, reasonable accommodations in the [ ] program[s] or benefit[s] may have to be made." *Alexander v. Choate,* 469 U.S. 287, 301, (1985). "The hallmark of a reasonable accommodation is effectiveness." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences.*, 804 F.3d 178, 189 (2d Cir. 2015). A reasonable "accommodation need not be 'perfect' or the one 'most strongly preferred' by the [ ]plaintiff, but it still must be 'effective[.]'" *Id.* (quoting *Noll v. Int'l Bus. Machs. Corp*., 787 F.3d 89, 95 (2d Cir. 2015)). Determining the "reasonableness of an [ ] accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Noll*, 787 F.3d at 94 (internal quotation omitted). On this

record, the Court is unable to determine if the accommodations afforded to Jardina were effective. Accordingly, summary judgment will be denied as to this claim.

### 2. Claim #4 Handicap Accessible Cell

On September 11, 2014, Jardina was issued a medical order for housing in a handicap single cell for one year. He was not provided a single handicap accessible cell until September 23, 2014. ECF 98-3 at p. 7; Yates Decl., ECF 98-2, ¶ 5; ECF 80-2 at p. 7.

Defendants state that once an inmate is given a medical order for a handicap single cell, the inmate is moved subject to availability of the cell and in order of issuance. Yates Decl., ECF 98-2, ¶ 6. Defendants assert that due to the passage of time, there is no record of when Jardina's housing unit manager received the medical order dated September 11, 2014, or how long it took for a handicap single cell to become available before Jardina was moved. *Id.* Once a cell becomes available, institutional security procedures require the cell to be inspected, cleaned, and any repairs made if necessary, before it is occupied by another inmate. *Id.* Jardina notes Defendants have not provided a copy of the security procedure and he has witnessed inmates moved from a cell and another inmate moved in right afterwards. ECF 102 at pp. 5; Jardina Decl., *id.* at p. 29, ¶ 10.

Defendants state that a review of available databases of inmate correspondence to the Warden and Chief of Security reveal no notification from Jardina during the 12 days he was waiting to move to a handicap accessible single cell. There is no record that Jardina notified the Assistant Warden and Chief of Security or filed an Administrative Remedy Procedure (ARP)[8] request that he was awaiting transfer pursuant to a medical order. ECF 98-2, ¶ 12.

---

[8] The Prison Litigation Reform Act requires that claims not properly presented through the administrative remedy procedure must be dismissed. 42 U.S.C. § 1997e. Title II of the ADA does not require exhaustion of administrative remedies by private litigants. *Jarboe*, 2013 WL 1010357, at *6.

Jardina maintains that he could not file complaints on case management decisions. Jardina Decl., ECF 102 at p. 31, ¶ 23. "At all times when complaints to medical or the administration might have been appropriate I availed myself of the process available for that purpose." *Id.* ¶ 24. "Records should have been kept in many instances as the record evidence would suggest but were not as my exhibits compared to defendant's claims prove." *Id.* ¶ 26.

On April 17, 2015, Jardina was moved to another tier and into a cell that was not handicap accessible. ECF 102 at p. 4; ECF 80-2 at p. 7. He alleges that he had to wait for correctional staff to take him to shower. On April 23, 2015, he wrote to Lieutenant Cander that "just because there are rails around the toilet doesn't make this a handicap accessible cell. My walker does not fit between the sink and bunk or is the bunk secured to the wall. Also, there is no rails [sic] in the shower or bench on this tier." ECF No. 102 at 24; ECF 85-2 at p. 5. Jardina was moved to a single, handicap access cell on June 11, 2015. ECF 80-2 at p. 7. Jardina's traffic history shows he remained in a single handicap access cell until April 12, 2017, when he transferred to DRCF. ECF 80-2 at pp. 5-7.

Jardina was placed in a single, handicap cell and assigned appropriate housing less than two weeks after the medical order issued. Against the background of prison administration, security, and housing concerns, the move to a handicap cell took place within a reasonable period. The brief delay between issuance of the order and Jardina's move to a handicap cell does not support a claim of discrimination because his disability.

Similarly, after Jardina informed corrections staff that his cell was not handicap accessible ("rails around the toilet in his cell doesn't make this a handicap cell"), he was transferred to a single, handicap cell to accommodate his needs. ECF No. 102 at 4; ECF 85-2 at p. 58.

Viewing the evidence in the light most favorable to Jardina, the Court finds there is no genuine dispute of material fact, and summary judgment will be entered in favor of Defendants.

### 3. Claim #5 Unrepaired Housing Unit Area

Jardina next contends Defendants knew that after he was transferred back to WCI from DRCF on May 10, 2016, he was placed "right back in harm's way" for eighteen days. Specifically,

Jardina alleges that between May 13, 2016, and June 1, 2016, he was assigned to Housing Unit 3,[9] which required him to cross the same pathway where he had fallen previously from his wheelchair.[10] Defendants assert that repairs on that pathway were completed on October 1, 2015, seven months before Jardina transferred back to WCI. Winters Decl., ECF 80-2 at p. 3, ¶ 8.

Jardina argues "nothing more" than temporary repairs had been completed. ECF 102 at p. 8. He asserts that on January 19, 2016, an administrative law judge, after reviewing photographs of the temporary sidewalk repair, found it "unacceptable." ECF 85 at p. 6; Office of Administrative Hearings, OAH No. DPSC-IGO-002V-15-38712, ECF 27-3 at p. 5, ¶ 9. The ALJ, however, did not find the October repair to the pathway unacceptable. More accurately, the ALJ found that on May 6, 2015, the date of Jardina's fall, the "[p]ath had "numerous ruts, holes and depression from the traffic (including large trucks), which traveled over the [p]ath," and that it had not been repaired for at least eighteen months prior to October 1, 2015, when a member of the correctional maintenance staff executed a September 17, 2015 work order to "patch problem areas for wheelchairs on blacktop." OAH No. DPSC-IGO-002V-15-38712, ECF 27-3 at p. 5, ¶¶ 8, 9.

On June 21, 2016, Acting Warden Gelsinger wrote to Jardina in response to his letter concerning his safety, "A maintenance order has been initiated to fix the area where your accident occurred. In order to provide you with a safe environment, you are currently being housed on the minimum security tier to limit your movement on the compound."[11] ECF 85-2 at p. 1; ECF 85 at

---

[9] Although Jardina's traffic history does not indicate where he was housed between May 12, 2016 and June 1, 2016, just before he was moved to Housing Unit 4 in a single handicap cell, Defendants indicate he was housed in a general population singe cell. ECF 80-2 at p. 6; Yates Decl. ECF 98-2 ¶7.

[10] On May 6, 2015, Jardina fell from his wheelchair while crossing the prison grounds en route to the "med shack" to receive his medication. ECF 1 at p. 5; ECF 85 at p. 6; ECF 85-2 at p. 46. Jardina asserted the pathway had ruts and depressions. ECF 1 at p. 5. Jardina filed a claim with the Inmate Grievance Office and was awarded compensation for an injury to his hand. ECF 85-2 at p. 1.

[11] Jardina asserts that he was not moved to the minimum security tier, Housing Unit 4 until June 1, 2016. ECF 102 at p. 7; *see also* Traffic History, ECF 80-2 at p. 6.

p. 13, ¶ 4; ECF 98-2 at pp. 4-6. Specifically, inmates on this tier have most of their needs sent to this tier to include medical, food service, education, etc. so that they need not travel over the prison compound." ECF 102 at p. 8, ECF 85-2 at p. 1; ECF 85 at p. 13, ¶ 4.

Jardina does not assert that he was injured because of this housing assignment. To the extent repairs on the pathway may have been temporary or inadequate, Gelsinger's letter demonstrates Jardina's safety concerns received serious and prompt attention and action was taken to accommodate his needs. Jardina does not establish he was denied a benefit because of his disability. Even when Jardina's allegations are viewed in the light most favorable to him, there is no genuine dispute of material fact to support an ADA claim. Defendants are entitled to judgment in their favor. Accordingly, summary judgment will be granted as to this claim.

### 4. Claim # 6 Denial of a Walker

Jardina next faults Defendants for denying him his walker during the time he was on administrative segregation (June 10, 2014, to August 16, 2014), which he claims "forc[ed] him to live on the floor, crawling to use the bathroom." ECF 65 at p. 3; ECF 65-1 at p. 9; 10; ECF 102 at p. 9. As discussed, Jardina was charged with a rule violation and placed in a handicap accessible cell on administrative segregation pending investigation. Jardina did not have a medical order permitting a walker in the segregation cell. Winter Decl., ECF 80-2, ¶ 5.

Defendants maintain that medical equipment inside a segregation cell poses a serious security risk because the equipment can be modified for use as a weapon. Housing unit managers, in an exercise of their discretion, prohibit medical equipment inside segregation cells unless the inmate has a medical order for segregation cell access. This policy is consistent with Institutional Directive WCI 110.0006.1.05 A (17), Disciplinary Segregation which provides:

> Canes, crutches, walkers, and wheelchairs that are assigned to you will not be kept
> in your cell unless medically necessary or in cell use, as ordered by the Medical

16

Department. These items will be stored with your property till [sic] such time as you are released for [sic] segregation.

ECF 98-2 at p. 9. "Staff discretion in determining security risks take absolute priority over medical orders." Yates Decl., ECF 98-2 at p. 3, ¶ 14.

Jardina argues that WCI 110.0006.1.05 A (17) involves disciplinary, not administrative, segregation, and its effective date is December 12, 2017, almost three years after he was placed in segregation housing. ECF 102 at p. 9. He argues that the property of inmates in administrative segregation is governed instead by the Division of Correction (DOC) Case Management Manual, DOC100.002, Section 18, Special Confinement Housing, Property § F (5), which provides inmates in administrative segregation for reasons other than pending a disciplinary hearing are permitted to retain the same possessions as general population inmates. ECF 102 at p. 10.[12]

Jardina was placed in segregation pending investigation of the altercation and to keep him apart from his assailant.[13] ECF 102 at pp. 10-11; *see also* Winter Decl., ECF 80-2, ¶ 5 ("In accordance with prison security procedures, both inmates were placed in administrative segregation and kept separated from each other for their own safety….). Jardina was charged with a rule violation and found not guilty at his hearing. Winter Decl., ECF 80-2, ¶ 5. On June 10, 2014, the other inmate was found guilty of violating a prison rule and was transferred to another institution on July 25, 2014 to prevent future altercations with Jardina. *Id.* Jardina was transferred to the general population on August 16, 2014. *Id.*

The record does not indicate when Jardina was cleared of rule violation charges, but he remained in administrative segregation without his medically ordered walker for at least

---

[12] Jardina submitted a copy of the Case Management Manual, but it is missing the relevant page. The Court accessed the Manual at http://itcd.dpscs.state.md.us/pia/ShowFile.aspx?fileID=578 (viewed on April 10, 2019).

[13] Of interest, Jardina states that he was "worried" that after he came off administrative segregation he would be placed on a tier that was not handicap accessible. ECF 102 at p. 6.

twenty-four days after his assailant was transferred to another facility, a stated purpose of Jardina's administrative housing and the only reason applicable after he was cleared of rule violation charges. Jardina has refuted Defendants' generally stated assertions that he was denied his walker as a matter of security. There are material issues of fact in dispute whether the ADA was violated because Jardina was denied benefit of a medically ordered assistive device or reasonable accommodation while on administrative segregation. Therefore, the Court will deny summary judgment as to this claim.

### 5. Claim #7 Denial of Access to Programs

From June 11, 2016, to April 12, 2017, Jardina was assigned to WCI Housing Unit 4 Tier C (HU4C) in a single cell on a minimum security tier. Jardina claims Defendants placed him on a minimum security tier at WCI because the prison compound was unsafe,[14] and this placement resulted in a denial of programming, religious services, jobs, and activities. ECF 65 at p. 3.[15] Specifically, Jardina claims that during the time he was assigned to HU4C, he was denied access to "programs, services, and activities because the inmates on the tier ran everything themselves." ECF 65 at p. 3; Jardina Decl., ECF 102 at p. 30, ¶ 20. He does not explain why this blocked him from participating in activities on the tier. ECF 85 at 7. In his Opposition, he asserts that on "multiple occasions" he requested to work either in outside maintenance or the laundry department but was informed he could not work in those departments because he used a wheelchair. ECF 85-1 at p. 3, ¶ 25. *See* 98-1 at p. 7.

---

[14]     Jardina does not explain what he means by unsafe. He may be referring to the pathway across the compound. In his declaration, Warden Graham states that when Jardina was in Housing Unit 4-C, his medication was delivered to him at the housing unit so that he did not need to leave the unit and travel across the compound to obtain his medicine. Graham Decl., ECF 27-2 at 2, ¶ 7. Graham states Jardina's meals were also delivered to him and he could attend religious services within the unit. *Id.*

[15]     To the extent Defendants have argued that Jardina has no constitutional entitlement to jobs and programs ECF 80-1 at pp. 19-21, the argument fails to appreciate that a plaintiff need not demonstrate other sources of legal entitlement to participation in the program or activity to proceed under the ADA. *See supra* p. 6.

Defendants explain that inmates on HU4C have greater access to certain job details, tools, and equipment inside and outside the housing perimeter.  Winters Decl., ECF 80-2, ¶ 10.  For security reasons, inmates on this tier have reduced access to general population inmates to guard against contraband entering the general prison population.  Inmates on HU4C therefore do not participate in general population religious, educational, or job programs.  If an inmate on HU4C wants to participate in general population programs instead of those offered on the tier, the inmate may request a transfer to Housing Unit 4, general population.  Winters Decl., ECF 80-2, ¶ 10.  Further, Defendants assert Jardina was assigned to "worker general special utility detail" from June 6, 2016, through April 4, 2017.  Yates Decl., ECF  98-2 at p. 2, ¶ 13.

Defendants assert that any inmate requests to join an academic, religious, or job program or denials of the requests are maintained in an inmate's file.  Scramlin Decl., ECF 98-4, ¶ 2.  No program requests or denials of such requests are in Jardina's base file for the time he was housed at WCI in minimum security.  Scramlin Decl., ECF 98-4, ¶ 2.  There is no record of Jardina requesting reassignment from HU4C.  Yates Decl., ECF 98-2, ¶ 10.  A review of available database records shows no correspondence from Jardina complaining he was denied any program, religious service, or job assignment, including outside maintenance or laundry department because of his wheelchair or any other reason during the time Plaintiff was housed on HU4C.  Yates Decl., ECF 98-2, ¶ 9.  Plaintiff never submitted any ARP complaints regarding lack of programs, religious services, or job assignment pertaining to his housing assignment on HU4C.  Jardina was assigned to worker general special utility detail from June 6, 2016, through April 4, 2017.  *Id.*, ¶ 13.

Jardina disputes his assignment to the general special utility detail.  ECF 102 at p. 15; ECF 85-2 at pp. 13-14.  He asserts that Defendants placed all inmates on HU4C on this detail so that he

and other inmates could not submit an ARP and to make it look like "Defendants were allowing [him] to work when in fact he was not." ECF 102 at p. 15.

Jardina has filed a copy of a letter from K. Boswell dated July 19, 2016,[16] denying his request to enroll in an employment readiness class. Boswell's letter stated: "Unfortunately, we cannot serve inmates on minimum at this time due to safety concerns. If this changes I will let you know." ECF 102-2 at p. 8. Boswell's letter, however fails to support Jardina's claim he was denied programming because of his disability. Jardina was not denied entry to the class because he used a wheelchair, but because the class was not open to inmates on minimum security.

Jardina claims in his declaration that he wrote to Mr. Clise, his case manager, who informed Jardina that he was unable to attend classes, groups, religious services, or work in the general population because he was in a wheelchair. ECF 102 at p. 11; Jardina Decl., ECF 102 at p. 31, ¶ 29.[17]

On this record, the Court cannot find that Jardina was provided meaningful access to prison programs, benefits, and services because there is evidence that he was in fact unable to avail himself of job opportunities available to other minimum security inmates because he is in a wheelchair. A full factual record developed through discovery will assist the Court in resolving issues of credibility, obtaining more information about institutional security requirements and housing availability that may have factored into Jardina's housing at WCI, and determining whether the accommodations provided to Jardina were reasonable. Summary judgment will be denied as to this claim. The Court will rescind its denial of Jardina's Motion for Appointment of

---

[16] No reason is provided why this letter was not found in Defendants' search of records.

[17] There is no documentation of such communication in the record.

Counsel (ECF 89, 94, ¶ 1) and direct the Pro Bono Attorney Coordinator to locate an attorney to represent him.

**IV.    Conclusion**

For the reasons discussed, the Court in a separate Order will deny the Motion to Amend (ECF 103), grant in part and deny in part Defendants' Motion for Summary Judgment (ECF 98), and grant Jardina's Motion for Appointment of Counsel.  Summary judgment will be granted as to Claims Four and Five and denied as to Claims Three, Six, and Seven.


Dated this 17th day of April, 2019.

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge